**FILED**

AUG 2 2 2017

~~CLERK~~

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH DAKOTA**
**WESTERN DIVISION**

MILBANK INSURANCE COMPANY,

              Plaintiff,

v.

RUSHMORE PHOTO & GIFTS, INC., a
South Dakota Corporation, JRE, INC., a South
Dakota Corporation, CAROL NIEMANN,
PAUL A. NIEMANN, and BRIAN M.
NIEMANN,

              Defendants.

CIVIL NO. _17-5066_

**COMPLAINT FOR DECLARATORY**
**JUDGMENT AND OTHER RELIEF**

## COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF

Plaintiff, MILBANK INSURANCE COMPANY ("Milbank"), by and through undersigned counsel, for its Complaint for Declaratory Judgment and Other Relief against Defendants, RUSHMORE PHOTO & GIFTS, INC. ("RUSHMORE"), JRE, INC., CAROL NIEMANN, PAUL A. NIEMANN, and BRIAN M. NIEMANN (collectively, the "RPG Defendants") alleges as follows:

## I.    NATURE OF THE ACTION

1.    This is an action for declaratory judgment, brought pursuant to 28 U.S.C. §§ 2201 and 2202, for the purpose of determining the rights and legal obligations under insurance policies issued by Milbank to the RPG Defendants.

2.    Milbank provided primary insurance policies (the "Milbank Policies") to the RPG Defendants. The Milbank Policies do not apply to claims for trademark infringement, intentional violations of the known rights of another, and injunctive relief.

3.      On June 22, 2011, Sturgis Motorcycle Rally, Inc. ("SMRI"), filed suit against the RPG Defendants alleging trademark infringement relating to the Sturgis Motorcycle Rally in Sturgis, South Dakota.

4.      Milbank agreed to defend the RPG Defendants, subject to a reservation of rights that the Milbank Policies do not provide coverage for trademark violations, intentional violations of the known rights of another, or claims for injunctive relief.

5.      Milbank agreed to allow the RPG Defendants to hire independent counsel at Milbank's expense.    Milbank did not control defense decisions and allowed the RPG Defendants' selected counsel to defend the case as he saw fit.

6.      Milbank has incurred costs in excess of $2 million while defending the RPG Defendants in the underlying lawsuit.

7.      Before trial in the underlying lawsuit, Milbank sent a letter to the insured stating that the Milbank Policies would not provide RPG with indemnity coverage for the trademark-related claims in the underlying lawsuit.

8.      On October 30, 2015, the jury returned a verdict finding that the RPG Defendants intentionally infringed upon SMRI's trademarks.

9.      With the trial court confirming that the suit was solely related to intentional trademark infringement, and with post-trial proceedings ongoing, Milbank reached out to the RPG Defendants to amicably withdraw from the defense and resolve this matter on February 2, February 14, February 22, March 2, March 3, March 10, March 16, April 4, April 7, 2017, June 12, 2017, and July 10, 2017. To date, Milbank has not received a substantive response from the RPG Defendants that will resolve this coverage dispute.

10.     Therefore, Milbank now seeks a ruling that Milbank has no duty to defend the RPG Defendants in the underlying lawsuit.

## II.     JURISDICTION AND VENUE

11.     Plaintiff Milbank Insurance Company is an Iowa insurance company duly authorized to transact in the business of insurance in South Dakota, with its principal place of business in Des Moines, Iowa.

12.     Defendant Rushmore Photo & Gifts, Inc. ("Rushmore") is a South Dakota corporation with its principal place of business at 11993 U.S. HWY 16, Custer, South Dakota 57730.

13.     Upon information and belief, JRE, Inc. is or was a South Dakota corporation with its principal place of business at 11993 US HWY 16, Custer, South Dakota 57730.

14.     Carol Niemann is an individual and, upon information and belief, a resident and domiciliary of South Dakota. At all times relevant to this dispute, Carol Niemann was an owner and director of Rushmore and JRE, Inc.

15.     Paul A. Niemann is an individual and, upon information and belief, a resident and domiciliary of South Dakota. At all times relevant to this dispute, Paul Niemann was an owner and director of Rushmore and JRE, Inc.

16.     Brian M. Niemann is an individual and, upon information and belief, a resident and domiciliary of South Dakota. At all times relevant to this dispute, Brian Niemann was an owner and director of Rushmore and JRE, Inc.

17.     This Court has jurisdiction over this action, pursuant to 28 U.S.C. §§ 2201 and 2202, insofar as Milbank seeks a declaration of its rights and duties under the Milbank Policies. Milbank seeks a declaration of the rights and obligations of the parties under the Milbank Policies, and an actual controversy exists with respect to coverage thereunder.

3

18. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). There is complete diversity of citizenship and the amount in controversy exceeds $75,000.

19. Venue is proper in this Court under 28 U.S.C. § 1391(b) and (c).

## III. BACKGROUND FACTS

20. Rushmore is a general merchandise company which designs, markets, and sells a variety of souvenirs, memorabilia, and merchandise that invoke imagery of Sturgis, South Dakota, and the widely-attended motorcycle rally ("the Rally") that takes place in Sturgis in August of each year.

21. SMRI is a South Dakota non-profit corporation with the mission of promoting the Rally. SMRI is the successor in interest to certain trademarks registered to the Sturgis Chamber of Commerce ("the Chamber"), another South Dakota non-profit corporation involved in promoting the Rally.

22. In 2010, SMRI allegedly obtained the rights to the pending trademark application for the term "Sturgis" from the original applicant, the Chamber.

23. On February 22, 2011, SMRI obtained Federal Trademark Registration No. 3,923,284 for the name "Sturgis" as it relates to goods and services associated with the Rally. *See* Exhibit A, February 22, 2011 Trademark.

24. In a letter dated March 29, 2011, SMRI informed retailers selling Rushmore products and others that:

> The U.S. Patent & Trademark Office recently awarded a federal trademark registration to SMRI for the STURGIS® mark, in conjunction with a wide array of goods and services related to the Sturgis® Motorcycle Rally.

4

... By virtue of the issuance of a federal registration to SMRI for the STURGIS® trademark, SMRI enjoys the exclusive right to use the STURGIS® trademark nationwide in connection with relevant Sturgis®-branded goods and services. SMRI intends to enforce its rights in conjunction with the 2011 Sturgis® Motorcycle Rally, so as to prevent unauthorized and infringing uses of the STURGIS® mark ...

*See* Exhibit B, March 29, 2011 letter from SMRI.

25.     The letter goes on to identify manufacturers and distributors SMRI licensed to produce and distribute official Sturgis® products. The letter does not identify the RPG Defendants as an official Sturgis® licensee. *See*, Exhibit B.

26.     Rushmore became aware of SMRI's March 29, 2011 letter and purported trademark rights soon after it was sent.

**A.     The Underlying Lawsuit**

27.     On June 22, 2011, SMRI filed the suit captioned *Sturgis Motorcycle Rally, Inc. v. Rushmore Photo & Gifts, Inc. et al.*, Civ. No. 11-5052, in the United States District Court for the District of South Dakota (hereafter referred to as "the Underlying Lawsuit"). *See* Exhibit C, Underlying Complaint[1].

28.     SMRI alleged, *inter alia*, violations of the following trademarks:

- STURGIS®, U.S. Reg. No. 3,923,284, for use in connection with an extensive array of goods and services;

- TAKE THE RIDE TO STURGIS®, U.S. Reg. No. 2,698,677, for use in connection with clothing, namely, t-shirts and sweatshirts and caps;

- STURGIS BIKE WEEK®, U.S. Reg. Nos. 2,070,955; 3,825,398; 3,818,703; 3,838,171; 3,911,270; 3,923,236 for use in connection with a wide variety of merchandise; and

---

[1] The First Amended Complaint, rather than the initial Complaint, is attached hereto as that is the operative pleading in this matter.

- The STURGIS Composite Design Mark, U.S. Reg. No. 1,948,097, for use in connection with, *inter alia*, "promoting sports competitions and/or events of others, namely motorcycle rallies, exhibits and competitions."

*See* Exhibit C.

29. The Underlying Lawsuit includes eight causes of action against the RPG Defendants: (Count I) Infringement of Registered Marks, 15 U.S.C. § 1114; (Count II) Unfair Competition, 15 U.S.C. § 1125(a)(1)(A); (Count III) False Advertising, 15 U.S.C. § 1125(a)(1)(B); (Count IV) Dilution of Famous Mark, Federal Trademark Dilution Revision Act Violation, 15 U.S.C. § 1125(c); (Count V) Violation of Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d); (Count VI) Unfair Competition and Trademark Infringement, South Dakota Common Law; (Count VII) Trademark Infringement, SDCL 37-6 and Related Provisions; and, (Count VIII) Deceptive Trade Practices, SDCL 37-24-6 and Related Provisions. *See* Exhibit C.

30. Each of the claims made against the RPG Defendants are premised entirely upon the RPG Defendants' alleged infringement on SMRI's trademarks. *See* Exhibit C.

31. In association with these claims, SMRI sought monetary relief, statutory damages, and injunctive relief from the RPG Defendants. *See* Exhibit C.

**B.    Milbank's Defense of the RPG Defendants Subject to a Reservation of Rights**

32. Although the Milbank's Policies do not cover trademark infringement, intentional violations of the known rights of another, or claims for injunctive relief against an insured, Milbank agreed to defend the RPG Defendants against SMRI's allegations subject to a reservation of rights.

33.     The RPG Defendants specifically requested that Milbank agree that the law firms of Gunderson, Palmer, Nelson & Ashmore, LLP and Patterson Thuente Pederson, P.A. with whom the RPG Defendants had a prior relationship, represent the RPG Defendants in the Underlying Lawsuit.

34.     Milbank agreed that the law firms of Gunderson Palmer and Patterson Thuente could represent the RPG Defendants at Milbank's expense.

35.     At no point during the Underlying Litigation did Milbank control the defense decisions made by the RPG Defendants and their selected counsel.

**C.     Milbank Spent Over $2 Million Defending the RPG Defendants and Allowed the RPG Defendants to Retain Counsel of Their Choice**

36.     Milbank has paid over $2 million in legal fees charged by the Gunderson Palmer and Patterson Thuente law firms in the Underlying Lawsuit.

37.     These fees were incurred to defend non-covered claims that the RPG Defendants intentionally infringed upon trademarks which it knew belonged to SMRI, and to pursue the RPG Defendants' affirmative, non-covered business tort counterclaims against SMRI.

38.     The RPG Defendants asserted counterclaims which advanced their business interests, seeking to invalidate SMRI's trademark on the term "Sturgis" because (1) SMRI knowingly misled the U.S. Patent & Trademark Office into believing that SMRI or the Chamber had "substantially exclusive and continuous use" of the term; (2) "Sturgis" is a generic term which cannot be trademarked; and (3) "Sturgis" is a geographically descriptive term which cannot be trademarked. *See* Exhibit D, RPG Counterclaim.

39.     The RPG Defendants' counterclaims also sought damages for SMRI's alleged tortious interference with contracts and/or business relationships, and common law unfair competition. *See*, Exhibit D.

7

**D.      SMRI's First Amended Complaint Adding Wal-Mart as a Defendant**

40.      On April 24, 2012, SMRI filed an Amended Complaint alleging the same causes of action as its original Complaint, but adding Wal-Mart as a defendant. *See* Exhibit C.

41.      In its Amended Complaint, SMRI asserted Wal-Mart had marketed and sold the RPG Defendants' trademark-infringing products at a Wal-Mart store in Spearfish, South Dakota. *See* Exhibit C.

42.      Soon after being named in SMRI's Amended Complaint, Wal-Mart demanded that the RPG Defendants defend and indemnify it relative to the Underlying Lawsuit pursuant to a "Supplier Agreement" that Rushmore and Wal-Mart had previously entered into. *See* Exhibit E, April 3, 2012 Tender to RPG.

43.      Without consulting Milbank, Rushmore agreed to defend and indemnify Wal-Mart relative to the Underlying Lawsuit.

44.      The Gunderson Palmer and Patterson Thuente law firms began to defend both RPG Defendants and Wal-Mart. *See* Exhibit F, Wal-Mart Answer to First Amended Complaint.

45.      Until its decision to amicably withdrawal from the RPG Defendants' defense, Milbank was also paying for Gunderson Palmer and Patterson Thuente's defense of Wal-Mart subject to a reservation of rights.

**E.      Jury Verdict Finding Rushmore and Wal-Mart Willfully and Intentionally Infringed on SMRI's Trademarks and Other Protected Interests**

46.      On October 30, 2015, the jury rendered a verdict against Rushmore, JRE, Inc., Carol Niemann, Brian Niemann, Paul Niemann, and Wal-Mart (collectively, the "Underlying Defendants"). The jury based its verdict on the determination that the Underlying Defendants infringed on one or more of SMRI's trademarks. *See* Exhibit G, Jury Verdict Form.

47.     The jury further concluded that Underlying Defendants' trademark infringements were "willful and intentional." *See* Exhibit G.

48.     On December 2, 2015, the court entered judgment in favor of SMRI and awarded SMRI $771,870, broken down as follows: (1) $158,750 from Rushmore; (2) $230,000 from Wal-Mart; (3) $52,500 from JRE, Inc.; (4) $156,250 from Carol Niemann; (5) $156,250 from Paul Niemann; (6) $158,750 from Brian Niemann. *See* Exhibit H, Order of Judgment.

49.     On March 10, 2017, the trial court vacated the monetary awards against the RPG Defendants based upon the equitable defenses of laches and acquiescence.

50.     The post-judgment attorney invoices received by Milbank since March 10, 2017 reflect that the majority of work being performed the RPG Defendants' defense counsel relates to claims seeking solely equitable or injunctive relief.

**F.     The Milbank Policies**

51.     Milbank issued Rushmore primary insurance policies from 1996 through 2013. The following is excerpted from Milbank Policy No. BOP 9414434 14 covering December 31, 2010 to December 31, 2011. *See* Exhibit I, Milbank Policy No. BOP 9414434 14.

52.     This Policy was in effect when SMRI filed suit against the RPG Defendants, and is representative of the Milbank Policies' terms and conditions:

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

1.      Insuring Agreement

    a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. . . .

*     *     *

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments – Coverages A and B.

b.     This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

*     *     *

*See* Exhibit I.

53.     At Section V – Definitions, paragraph 14, the Milbank Policies define "personal and advertising injury" as:

*     *     *

14.     "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

*     *     *

f.     The use of another's advertising idea in your "advertisement"; or

g.     Infringing upon another's copyright, trade dress or slogan in your "advertisement".

*See* Exhibit I.

54.     The Milbank Policies provide the following exclusions from coverage which are applicable in this case:

**COVERAGE B PERSONAL AND ADVERTISING INJURY LIABILITY**

*     *     *

2.     Exclusions

This insurance does not apply to:

a.     **Knowing Violation of Rights of Another**
"Personal and Advertising Injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury";

10

b.  **Material Published With Knowledge of Falsity**
    "Personal and advertising injury" arising out of oral or written
    publication of material, if done by or at the direction of the insured
    with knowledge of its falsity.

*    *    *

e.  **Contractual Liability**
    "Personal and Advertising Injury" for which the insured has
    assumed liability in a contract or agreement. This exclusion does
    not apply to liability for damages that the insured would have in
    the absence of the contract or agreement;

*    *    *

g.  **Quality or Performance of Goods – Failure to Conform to Statements**
    "Personal and advertising injury" arising out of the failure of
    goods, products or services to conform with any statement of
    quality or performance made in your "advertisement."

*    *    *

i.  **Infringement of Copyright, Patent, Trademark or Trade Secret**
    "Personal and Advertising Injury" arising out of the infringement
    of copyright, patent, trademark, trade secret or other intellectual
    property rights.

    However, the exclusion does not apply to infringement, in your
    "advertisement", of copyright, trade dress or slogan.

*    *    *

l.  **Unauthorized Use of Another's Name or Product**
    Arising out of the unauthorized use of another's name or product
    in your email address, domain name, or metatag, or any similar
    tactics to mislead another's potential customers.

*See* Exhibit I.

## COUNT I – DECLARATORY RELIEF (TRADEMARK EXCLUSION)

55.   Milbank restates and incorporates each of the above-referenced allegations as if
set forth fully herein.

11

56.     Trademark infringement does not qualify for coverage under the Milbank Policies' definition of "personal and advertising injury."

57.     The Milbank Policies contain an explicit exclusion for "personal and advertising injury "[a]rising out of the infringement of copyright, patent, trademark, trade secret or other intellectual property rights" (the "Trademark Exclusion")

58.     The Amended Complaint in the Underlying Lawsuit (the operative pleading) contains claims that are entirely premised on the RPG Defendants' alleged trademark infringement.

59.     Furthermore, the jury has since found that all of SMRI's recoverable damages were based on the RPG Defendants' trademark infringement.

60.     Accordingly, Milbank has no duty to defend the RPG Defendants in the Underlying Lawsuit because the Trademark Exclusion bars coverage for the Underlying Lawsuit in its entirety.

WHEREFORE, Milbank prays that this Court enter a judgment in its favor and against defendants, declaring that Milbank has no duty to defend the RPG Defendants in connection with the lawsuit filed by Sturgis Motorcycle Rally, Inc. in the U.S. District Court for the District of South Dakota, Civ. No. 11-5052, and for such other and further relief deemed just and appropriate.

## COUNT II – DECLARATORY RELIEF
### (INTENTIONAL AND/OR WILLFUL CONDUCT)

61.     Milbank restates and incorporates each of the above-referenced allegations as if set forth fully herein.

62.     The Milbank Policies exclude from coverage "personal and advertising injury" "[c]aused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict personal and advertising injury" (the "Intentional and/or Willful Conduct Exclusion").

63.     The Amended Complaint in the Underlying Lawsuit (the operative pleading) contains claims that are entirely premised on the RPG Defendants' alleged intentional conduct

64.     Furthermore, the jury in the Underlying Lawsuit specifically and solely found that all of SMRI's recoverable damages were based on the RPG Defendants' trademark infringement.

65.     The jury concluded the RPG Defendants knew that SMRI had rights to the Sturgis® mark and other marks, but knowingly and intentionally infringed upon those marks anyway.

66.     Accordingly, Milbank has no duty to defend the RPG Defendants in the Underlying Lawsuit because the Intentional and/or Willful Conduct Exclusion bars coverage for the Underlying Lawsuit in its entirety.

WHEREFORE, Milbank prays that this Court enter a judgment in its favor and against defendants, declaring that Milbank has no duty to defend the RPG Defendants in connection with the lawsuit filed by Sturgis Motorcycle Rally, Inc. in the U.S. District Court for the District of South Dakota, Civ. No. 11-5052, and for such other and further relief deemed just and appropriate.

### COUNT III - DECLARATORY RELIEF (OTHER RIGHTS)

67.     Milbank restates and incorporates each of the above-referenced allegations as if set forth fully herein.

13

68.     In addition to the above-referenced requests for relief, Milbank asks this Court to declare that Milbank has no duty to provide coverage, or is entitled to recover certain amounts spent in connection with the Underlying Lawsuit, based on the following grounds:

a)      Milbank has no duty to defend claims for "personal and advertising injury" where such injury arises from publications or distributions of infringing material that occurred prior to the inception of any Milbank Policy.

b)      Milbank has no duty to defend claims for any liability or potential liability which the RPG Defendants knew of, and did not disclose to Milbank, prior to the inception of any Milbank Policy.

c)      Milbank has no duty to defend claims for "personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the RPG Defendants with knowledge of its falsity

d)      Milbank has no duty to defend claims for "personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in the RPG Defendants' "advertisement."

e)      Milbank has no duty to defend claims that do not seek damages, or claims that are seek solely injunctive or equitable relief.

f)      Milbank has no duty to pay attorneys' fees incurred in prosecuting Milbank's counterclaims, cross-claims, and/or third-party claims in the Underlying Lawsuit.

14

g)    Milbank has no duty to pay defense costs that are not reasonable and
necessary, or are otherwise unrelated to a covered claim.

h)    Milbank has no obligation to pay attorneys' fees incurred defending Wal-
Mart to the extent that Wal-Mart's agreements with the RPG Defendants
are not "insured contracts."

i)    Milbank has no obligation to pay attorneys' fees incurred defending Wal-
Mart to the extent that Wal-Mart otherwise violated the "Supplemental
Payments" provisions of the Milbank Policies.

j)    Milbank has no obligation to cover, fund, reimburse, or otherwise
guarantee performance of any obligations Defendants undertook which
violate the "voluntary payments" provisions of the Milbank Policies.

k)    Milbank has no duty to defend the RPG Defendants to the extent that
coverage is precluded by the terms, conditions, and exclusions of the
Milbank Policies.

WHEREFORE, Milbank prays that this Court enter a judgment in its favor and against
defendants, declaring that Milbank has no duty to defend the RPG Defendants in connection with
the lawsuit filed by Sturgis Motorcycle Rally, Inc. in the U.S. District Court for the District of
South Dakota, Civ. No. 11-5052, and for such other and further relief deemed just and
appropriate.

**BASSFORD REMELE**
*A Professional Association*

Dated:  August 21, 2017        By

Mark D. Covin (SD #4340)
Attorneys for Plaintiff
100 South 5th Street, Suite 1500
Minneapolis, MN 55402-1254
Telephone:  (612) 333-3000
Facsimile:  (612) 333-8829
mcovin@bassford.com